**Chris Mertens (OSB No. 092230)**
MERTENS LAW, LLC
1040 NE 44th Avenue, Suite 4
Portland, Oregon 97213
Phone: (503) 836-7673
Fax: (503) 206-0115
Chris@MertensCSBLaw.com

**Sarah R. Osborn (OSB No. 222119)**
KELLER ROHRBACK L.L.P.
601 SW 2nd Ave., Suite 1900
Portland, OR 97204
Phone: (206) 623-1900
Fax: (206) 623-3384
sosborn@kellerrohrback.com

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SUSAN KAY, | No. 3:23-cv-1440-XX |
| Plaintiff, | **COMPLAINT** |
| v. | |
| JPMORGAN CHASE BANK, N.A., | Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* |
| Defendant. | Oregon Commercial Code, Funds Transfers, ORS 74A.1010, *et seq.* |
| | Conversion |
| | Negligence |
| | Oregon Unlawful Trade Practices Act, ORS 646.608, *et seq.* |
| | **JURY TRIAL DEMANDED** |

## I.    INTRODUCTION

1.    This case is about Defendant having every opportunity to protect its elderly customer, and intentionally choosing not to take any action—allowing unauthorized transfers from her account actually and proximately resulting in plaintiff's economic and non-economic damages. Plaintiff, Ms. Susan Kay, an honored Oregon consumer, did everything she could to inform Defendant of suspicious activity related to her bank account—including everything that was required of her by Defendant's policies and account agreement—and asked Defendant for help. Despite Ms. Kay's requests, Defendant allowed her money to be taken by fraudsters and failed to honor its obligations to Ms. Kay. Instead, Defendant blamed Ms. Kay, refused to conduct any meaningful investigation, and left Ms. Kay holding the bag.

2.    Congress' purpose in enacting the Electronic Funds Transfer Act (EFTA) was to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. §1693(b). "The primary objective of [the EFTA] is the provision of individual consumer rights." *Id*. The EFTA and its accompanying Regulation E caps liability to victims of electronic transfer theft at $50.00 and requires banks to refund all monies above that amount.

3.    The implementing regulations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.,* commonly known as "Regulation E," broadly deal with the "basic rights, liabilities, and responsibilities of consumers who use

electronic fund transfer and financial institutions that offer these services." 12 C.F.R. § 205.1.

4.    The Uniform Commercial Code ("UCC") Article 4-A, enacted in Oregon as ORS 74A.1010 *et seq.*, protects consumers from liability against unauthorized wire transfers from their accounts. UCC Article 4 requires unauthorized wire transfers to be refunded to a customer's account, plus interest.

5.    The Oregon UTPA transformed the public into "private attorneys general" by authorizing consumers who suffer an ascertainable loss of money or property from violations of the statute to sue in their own names and recover damages. The UTPA is to be interpreted liberally in favor of consumers. *See Denson v. Ron Tonkin Gran Turismo, Inc.*, 279 Or. 85, 90 n.4, 566 P.2d 1177 (1977) (discussing legislative history of Oregon's enactment of the UTPA).

## II.    JURISDICTION

6.    Jurisdiction of this Court arises under 15 U.S.C. § 1693m and generally pursuant to 28 U.S.C. § 1331. Jurisdiction over the pendant state law claims arises under 28 U.S.C. § 1367(a) because these claims are so related to the federal claims that they form part of the same case or controversy.

7.    Venue is proper because a substantial part of the events and omissions giving rise to the claim occurred within this district, Ms. Kay resides here, and Defendant transacts business here.

8.    Defendant has at all relevant times transacted business within the State of Oregon by providing banking services to Plaintiff via the mails, telephone,

and internet while Plaintiff was located within and permanently residing within the State of Oregon.

9.    Plaintiff has suffered an injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

### III.    PARTIES

10.    Plaintiff Susan Kay ("Plaintiff" or "Ms. Kay") is a natural person, over the age of 65, who resides in the City of Astoria, Clatsop County, State of Oregon and a "consumer" as that term is defined by 15 U.S.C. § 1693a and 12 C.F.R. § 1005.2(e).

11.    At all times relevant to the events set forth herein, Ms. Kay was a natural person seeking Defendant's services regarding her deposit accounts that were held for primarily personal, family, or household purposes.

12.    Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "Chase" or "Chase Bank") is a national bank and a covered "financial institution" under EFTA 15 U.S.C. § 1693a(9) and Regulation E, 12 C.F.R. § 1005.2(i), and a "person" as defined in Regulation E, 12 C.F.R. § 1005.2(j).

13.    Defendant has a principal place of business located in Columbus, Ohio, and with a registered agent of process named C T Corporation System located in Salem, Oregon, and is an entity covered by 15 U.S.C. § 1693 and under Regulation E, 12 C.F.R. § 1005.2.

14.    The acts and omissions of the individuals employed by Chase, and the other individuals employed as agents of Chase as described, were committed within the time and space limits of their agency relationship with their principal, Chase.

15.    The acts and omissions by these individuals were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Chase. By committing these acts against Kay, these individuals were motivated to benefit their principal, Chase.

16.    Chase is therefore liable to Kay through the Doctrine of respondeat superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its employees, including but not limited to violations of the EFTA and Regulation E and state law.

## IV.    FACTUAL ALLEGATIONS

17.    Defendant held a savings account and a demand deposit (checking) account for Ms. Kay that she had established primarily for personal, family and household purposes, both of which are "accounts" as set forth in 15 U.S.C. § 1693a(2) and Regulation E, 12 C.F.R. § 1005.2(b)(1).

18.    Defendant issued access devices, as defined in Reg. E, 12 C.F.R. § 1005.2(a)(1), via Defendant's online banking website and consumer banking portal via website and computer application to Ms. Kay that would allow the initiation of "electronic funds transfers" as defined in 15 U.S.C. § 1693a(7) and Reg. E, 12 C.F.R. § 1005.3(b)(1).

19.    From November 4 to November 7, 2022, Defendant initiated certain electronic funds transfers from and between Plaintiff's consumer bank accounts ordered by an unknown third-party scammer, which were "electronic funds transfers" as that term is defined by 15 U.S.C. § 1693a(7) and Regulation E, 12

C.F.R. § 1005.3(b)(1), and making such transfers subject to the Electronic Funds

Transfer Act, 15 U.S.C. § 1693, *et seq.*, and Regulation E, 12 C.F.R. 1005.1, *et seq.*

20.    On November 4, 2022, at around 1:00 p.m. Ms. Kay was on her

personal computer when the screen was hidden by a message purporting to be a

security message from Microsoft indicating that Ms. Kay's security had been

compromised.

21.    Ms. Kay, concerned about her personal and informational security,

followed the instructions by not turning off her personal computer and immediately

calling the number in the message, as instructed.

22.     Ms. Kay was instructed on the telephone by a person identifying

themselves as a Microsoft security employee, who was in actuality a scammer, that

her personal information regarding her bank account had been accessed.

23.    Ms. Kay was connected by the scammer to another scammer indicating

they were a representative of Defendant.

24.    Ms. Kay followed the scammer's instructions to provide her IP address

to assist with steps Ms. Kay was told were necessary to close and reopen her bank

account to protect her from further fraud.

25.    The scammer utilized a screen sharing program to control Ms. Kay's

cursor and went to the Chase Bank website where Ms. Kay logged in under duress

of the scammers' fraudulent direction. The scammer controlled Ms. Kay's computer

and moved her mouse cursor to transfer $10,000.00 from Ms. Kay's savings account

to her checking account.

26.    Ms. Kay was suspicious of the events and immediately hung up and within minutes, at 1:23 p.m. on November 4, 2022, Ms. Kay called Chase Bank's Fraud Department and spoke with an employee/agent of Defendant identified as Kayla to explain what was happening to her and convey her suspicions that she was being in danger of being further defrauded by the scammers.

27.    Ms. Kay relayed in detail the events and the scammer's actions. Ms. Kay shared the details with Chase's Fraud Department how the scammer had fraudulently obtained access to her account and transferred $10,000 from her savings account without her authorization, and that the scammers had control of her computer and account.

28.    Ms. Kay relayed to Chase's Fraud Department how her account was compromised by the scammer. Ms. Kay asked Chase to keep her account and money safe from any further fraud and prevent Ms. Kay from suffering any loss as a result of the scammer's fraudulent account access and unauthorized transfer.

29.    Defendant, through its agent/employee, told Ms. Kay that everything would be fine, and that Ms. Kay need only change her login and password and walked Ms. Kay through the steps to change her password.

30.    Ms. Kay asked Defendant to transfer the funds back to her savings account, but Defendant declined to reverse or cancel the transfer. Chase instructed Ms. Kay that she could transfer the funds herself from her checking back to her savings account the next day.

31. Defendant willfully ignored the risks faced by Ms. Kay and the danger conveyed by the detailed notice Ms. Kay provided to defendant.

32. Defendant knew the transfer from Ms. Kay's savings account was fraudulent.

33. Ms. Kay alerted Chase's Fraud Department nearly simultaneously to the scammers' unauthorized transfer of $10,000 from Ms. Kay's savings account.

34. Ms. Kay notified Chase Bank within minutes of her stolen access device and of the unauthorized transfer.

35. Despite Chase's knowledge and the immediacy of Ms. Kay's notice, Chase did nothing to stop or reverse the fraudulent electronic fund transfer.

36. Defendant falsely misled Ms. Kay to believe that her account and money were secure and protected, and Chase would continue to ensure her accounts remained protected.

37. Chase knew or reasonably should have known that its false misrepresentation of Ms. Kay's security and the failure to transfer the money back to savings left Ms. Kay's money potentially exposed further fraud, including a wire transfer.

38. Chase knew or reasonably should have known that an unauthorized wire transfer from Ms. Kay's checking account would be nearly impossible to reverse, recall, and/or recover, and knew of the extreme risk Chase created by refusing to assist Ms. Kay in reversing the unauthorized transfer and properly securing her account.

39.    The next day, on Saturday, November 5, 2022, Kay attempted to log into her online banking account with her new login but was notified by Chase Bank that her account was locked.

40.    Ms. Kay called Chase's online banking phone number to inquire as to why she was unable to access her accounts after notifying Chase of the fraud the day prior. Chase's representative told Kay they saw she had logged in several times that day and suggested it was a problem with Kay's internet provider. At Chase's suggestion, Ms. Kay even called her internet provider who confirmed there was no problem with Ms. Kay's internet connection.

41.    Ms. Kay continued to call Chase multiple times in an effort to gain access to her online bank accounts. Ms. Kay was unable to access her bank accounts. Defendant's automated message at the fraud department informed Ms. Kay that Chase's fraud department was closed over the weekend.

42.    Defendant willfully refused to assist Ms. Kay to gain access to her banking account from November 5 through the early hours of November 7, 2022.

43.    Upon information and belief, Defendant willfully misled Ms. Kay, leading her to believe that she could not access her banking accounts and that Defendant could not help Ms. Kay until Monday, November 7, 2022.

44.    Defendant knew or reasonably should have known that Ms. Kay's banking accounts, personal information, and personal access device were compromised from Ms. Kay's timely and thorough notice given to Chase on November 4, 2022.

45.    Defendant's false representations to Ms. Kay about access to her account were willful, knowing, offensive to the sense of common decency, and recklessly ignored the danger and harm to Ms. Kay and her money.

46.    Ms. Kay felt abandoned by Chase. Ms. Kay felt stranded and betrayed by her bank who she relied upon to keep her money safe. Ms. Kay was frightened that she remained exposed to scammers and thieves. As a direct and proximate result of Chase's gaslighting response to her request for access and assistance, Ms. Kay was left helpless to prevent further fraudulent activity.

47.    Chase forced Ms. Kay to trust that Chase was being true to its word and protecting her account as Chase assured her it would on November 4, 2022.

48.    In the early hours of Monday, November 7, 2022, at approximately 12:20 AM, Ms. Kay's trust in Chase's representations about the safety of her account was shattered as her worst fears were realized. After being unable to access her accounts all weekend and notifying Chase Bank of her inability to access the accounts, Kay received an email from Chase that $17,000 had been fraudulently transferred out of her checking account and she was being charged a $25.00 wiring fee.

49.    Despite Ms. Kay's November 4, 2023 notice to Chase of the fraud and unauthorized transfer, as well Ms. Kay's multiple requests for assistance to protect her accounts and diligent efforts to access her own accounts over the weekend, Chase failed to stop the unauthorized transaction.

50.    Chase knew or reasonably should have known that an unauthorized wire transfer was a potential risk from Ms. Kay's November 4, 2022 notice.

51.    Kay contacted Chase again at approximately 1:00 AM on November 7, 2022, to report fraudulent access and the unauthorized transfers from her bank account.

52.    Upon information and belief, Chase represented that they would freeze Kay's accounts, but took no further action.

53.    Chase told Kay to call back at 4:00 AM (PST) to file a claim when its fraud department was open.

54.    Upon information and belief, a wire transfer of $17,000 from Ms. Kay's Chase checking account, initiated by scammers who fraudulently obtained access to Ms. Kay's account, was completed at or around 3:21 AM on November 7, 2022, despite Chase representing that it flagged the transfer and froze Ms. Kay's accounts. The unauthorized $17,000 wire transfer was initiated *after* Ms. Kay gave notice to Chase.

55.    Upon information and belief, Chase did not immediately prevent nor recall the wire transfer during Ms. Kay's 1:00 AM phone call.

56.    Upon information and belief, Chase did not freeze Ms. Kay's account or take any action to protect Ms. Kay's account and money.

57.    At 4:00 AM on November 7, as instructed, Kay reported the unauthorized transfer to Chase's fraud department. Upon information and belief, it was then that Ms. Kay was transferred to the wire transfer recall department.

58.    Ms. Kay understood that Chase was requesting a wire recall because it acknowledged that the wire was fraudulent.

59.    On November 8, 2022, Kay met with a police officer with the City of Astoria, Oregon Police Department and filed a criminal complaint over these fraudulent transfers.

60.    Upon information and belief, despite having the opportunity to prevent or cancel the wire transfer, Chase did not freeze Ms. Kay's account, nor take any other action to halt the wire transfer before it was accepted by the beneficiary bank.

61.    Upon information and belief Chase did not freeze Ms. Kay's account.

62.    Upon information and belief Chase failed to immediately recall the wire transfer.

63.    Instead of helping Ms. Kay, Chase charged Ms. Kay $25 for the fraudulent wire transfer.

64.    Upon information and belief, Chase failed to adequately investigate Ms. Kay's notice of error of the unauthorized electronic fund transfer from her savings account to her checking account on November 4, 2022.

65.    Kay continued to follow-up with Chase requesting return of the funds and a review of her claim based on Chase's error of allowing the unauthorized electronic fund transfer and taking no action to protect her account. Kay sent written communications through Chase's online portal, via fax, and continued to follow-up via telephone.

66.    Ms. Kay disputed and requested resolution and relief from Chase's multiple fraud departments for the fraudulent transfer from her savings, as well as the resulting unauthorized wire transfer and attendant $25 fee, totaling over $17,025 in economic damages suffered as a proximate result from Chase failing to investigate and resolve Ms. Kay's timeline notice of fraud.

67.    Kay never provided any person with permission, consent, or authority to debit the fraudulent funds from her account with Chase.

68.    Kay never authorized the debits of the fraudulent funds from her account with Chase.

69.    Chase has not conducted a good faith or reasonable investigation into the disputed $17,025 in funds fraudulently taken from Ms. Kay by Chase unreasonable indifference and failure to act.

70.    To date, Chase has not issued Kay credit for the $17,025 of fraudulently transferred funds from Kay's account with Chase. Presently, Kay remains without the $17,025 in funds debited from her account with Chase without her knowledge, authorization, or benefit.

FIRST CLAIM FOR RELIEF – ELECTRONIC FUNDS TRANSFER ACT
15 U.S.C. §§ 1693g, 1693f, and 1693m; and Regulation E, 12 C.F.R. §§ 1005.1, *et seq.*
COUNTS 1, 2, & 3

71.    Ms. Kay individually restates and incorporates herein all her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten for each of the following counts below in support of her First Claim for Relief.

FIRST CLAIM – COUNT ONE - 15 U.S.C. §§ 1693g and 1693m
(Failure to Limit Consumer Liability)

72.    The EFTA, in 15 U.S.C. § 1693g(e), prevents Ms. Kay from incurring any liability resulting from an unauthorized transfer except as expressly provided in 15 U.S.C. § 1693g.

73.    Ms. Kay notified Chase of circumstances which reasonably lead Chase to believe that an unauthorized electronic fund transfer involving Ms. Kay's account was and may be affected prior to any money or property being obtained by the scammer who initiated the unauthorized transfer.

74.    Ms. Kay's call to Chase on November 4, 2022, as the scammers initiated the unauthorized transfer of $10,000 from Ms. Kay's savings account reasonably provided Chase with pertinent information and notice related to the unauthorized transfer and the danger of further unauthorized transfers.

75.    Victims of robbery or fraud who have their funds fraudulently transferred are not liable for the fraudulent transfers under EFTA because they are "unauthorized" funds transfers:

> 2(m) Unauthorized Electronic Fund Transfer
> …
> Access device obtained through robbery fraud. **An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery**.

12 C.F.R. § Pt. 205, Supp. I., section 2 (m)(3) (bold added). *See Rusthoven v. TCF Nat. Bank*, No. CIV 07-3154 JRT-JJK, 2009 WL 2171105, at *3 (D. Minn. July 20, 2009).

76.    Chase has the burden of proof to show the transfer from Ms. Kay's account was authorized.

77.    Chase cannot in good faith show the transfer was authorized when Ms. Kay notified Chase it was not authorized as the unauthorized transfer from Ms. Kay's savings account was happening.

78.    As a result, Ms. Kay's liability resulting from the unauthorized transfer is capped at $0, and in no event more than $50, pursuant to 15 U.S.C. § 1693g(a)(1) and (2) and (e); Reg. E., 12 C.F.R. § 1005.6 (b)(1).

79.    Chase's violation of Ms. Kay's rights under the EFTA was intentional and did not result from a bona fide error.

80.    Pursuant to 15 U.S.C. § 1693m(a)(1), as an actual and proximate result of Chase's failure to limit Ms. Kay's liability in violation of the EFTA, Ms. Kay is entitled to her actual damages consisting of her economic damages of $17,025.00, and her non-economic damages for the emotional distress, worry, stress, sleeplessness, embarrassment, fear, and distrust for her personal safety and security in an amount to be awarded by the jury, but not less than $100,000.

81.    Ms. Kay is entitled to the maximum statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A) and (b)(1).

82.    Ms. Kay is entitled to her reasonable costs and attorney fees seeking this relief for Chase's violation of the EFTA pursuant to 15 U.S.C. § 1693m(a)(3).

FIRST CLAIM – COUNT TWO – 15 U.S.C. § 1693m, Reg. E., 12 C.F.R. § 1005.11
(Failure to Timely Investigate)

83.    Ms. Kay individually restates and incorporates herein all her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten in support of this count.

84.    As further alleged herein, Chase's conduct, including the conduct of its employees and/or agents-in-fact, violated the EFTA, including but not limited to the following ways:

A.    On the afternoon of November 4, 2022, Ms. Kay, nearly immediately, and well within two days, orally notified Chase via the telephone to the Chase Fraud Department of the fraudulent theft of her access device—her online computer account login credentials.

B.    At the same time, Ms. Kay notified Chase of the unauthorized transfer.

C.    Chase failed to properly and timely investigate and report back the results of the investigation to Ms. Kay following Ms. Kay's notice to Chase of the error related to the fraudulent account access, the account locking out, and the unauthorized electronic transfer from her savings account, which Chase was required to do pursuant to its obligations under 15 U.S.C. § 1693f(a)(3).

D.    Chase failed to timely complete the investigation within ten days.

E.    Chase did not ask Ms. Kay for any written confirmation for the reported errors, or in the alternative, Ms. Kay provided all written information requested sufficient to identify her by name, and her account number from which the unauthorized electronic fund transfer occurred.

F.    Chase failed to complete the investigation within ten days and failed to provisionally credit Ms. Kay's savings account as Chase was required to do if it could not complete its investigation within 10 days. *See* Reg. E., 12 C.F.R. § 1005.11(c)(2).

85.    As an actual and proximate result of Chase's failure to take protective action, failure to credit her account, failure to conduct an adequate investigation, and failure to find an error in the unauthorized transfer, Ms. Kay suffered economic damages in an amount no less than $17,025 and non-economic damages in an amount to be determined by a jury, but no less than $100,000.

86.    Ms. Kay is entitled to the maximum statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A) and (b)(1).

87.    Ms. Kay is entitled to her reasonable costs and attorney fees seeking this relief for Chase's violation of the EFTA pursuant to 15 U.S.C. § 1693m(a)(3).

FIRST CLAIM – COUNT THREE– 15 U.S.C. §§ 1693f, 1693m, Reg. E., 12 C.F.R. § 1005.11
(Failure to Provide Documents and Findings).

88.    Ms. Kay individually restates and incorporates herein all her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten in support of this count.

89.     The EFTA requires Chase, after investigating Ms. Kay's notice of error, if Chase determines that an error did not occur, Chase must deliver or mail to an explanation of its findings within three (3) business days after the conclusion of its investigation. Chase failed to do so because it did not conduct a good faith investigation as required by EFTA.

90.     Chase failed to promptly provide copies of the documentation it relied upon in determining that no error had occurred when Chase allowed the fraudulent transfer from Ms. Kay's savings account after Ms. Kay demanded copies of such documents, as required by and in violation of EFTA. *See* 15 U.S.C. §§ 1693f(d) ("upon request of the consumer[,] [the financial institution must] promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur.").

91.     Chase refused to provide Ms. Kay with documentation used in its alleged investigation resulting in the denial of her claim of error.

92.     Kay requested the information Chase had relied upon during its investigation. Chase refused to provide Ms. Kay with any documentation used in its alleged investigation resulting in the denial of her claim of error. Chase has still not provided Ms. Kay with any documentation.

93.     Upon information and belief, Chase never completed a timely and proper investigation into Ms. Kay's notice of error from November 4, 2022, and her subsequent notifications to Chase.

94.    Chase's affirmative conduct, and omissions, as more fully described herein, were done in violation of 15 U.S.C. § 1693f(a)(3).

95.    Chase's conduct, as delineated above, is in violation of 15 U.S.C. § 1693f(d)-(e)(1).

96.    As a result of Chase's violations of the EFTA, Kay has suffered, and continues to suffer mental anguish, emotional distress, and out-of-pocket damages. Kay is on a fixed income and the loss of these funds for several months has placed an extreme financial burden on Kay; making it more difficult to keep current on her bills.

97.    Chase's violation and failure to reasonably comply with its obligations regarding investigation and communication under the EFTA has caused Ms. Kay actual damages, including economic damages in an amount no less than $17,025 and non-economic damages in an amount to be determined by a jury, but no less than $100,000.

98.    Ms. Kay is entitled to the maximum statutory damages of $1,000 pursuant to 15 U.S.C. § 1693m(a)(2)(A) and (b)(1).

99.    Ms. Kay is entitled to her reasonable costs and attorney fees seeking this relief for Chase's violation of the EFTA pursuant to 15 U.S.C. § 1693m(a)(3).

FIRST CLAIM – AS TO ALL COUNTS – 15 U.S.C. §§ 1693fe, 1693m, Reg. E., 12 C.F.R. § 1005.11
(Treble Damages)

100.    Chase is liable for treble damages under 15 U.S.C. § 1693f(e)(1) because Chase did not provisionally re-credit Ms. Kay's account within ten days

after receiving the Ms. Kay's notice of an error and Chase did not conduct a good faith investigation.

101.    Alternatively, Chase is liable for treble damages under 15 U.S.C. § 1693f(e) because Chase did not provisionally re-credit Ms. Kay's account within ten days after receiving the Ms. Kay's notice of an error and Chase did not have a reasonable basis for believing the Ms. Kay's account was not in error. 15 U.S.C. § 1693f(e)(1).

102.    Chase is also liable for Ms. Kay's trebled actual damages because Chase knowingly and willfully concluded that Ms. Kay's account was not in error when it had no reasonable basis for that determination. 15 U.S.C. § 1693f(e)(2). Ms. Kay notified and communicated with Chase so promptly, often, and thoroughly, that Chase could not have any reasonable basis to determine that there was no error in the transfer from Ms. Kay's savings account.

103.    Chase blamed Kay in bad faith, accusing Ms. Kay of either transferring the $17,000 herself or authorizing the fraudulent transfers even though Ms. Kay had actively communicated the details and risks of the situation from the start.

104.    Chase knew that the statement it made victim blaming Kay for the loss of her $17,000 was false and had no basis in any fact or evidence.

105.    Upon information and belief, Chase did not take into account Ms. Kay's communications and representations of the events that lead to her being defrauded of her account access, nor did Chase consider its own willful, intentional,

and reckless actions in response to Ms. Kay's notice and plea for help to secure her account when Chase "concluded" there was no error and Ms. Kay it would leave its customer, Ms. Kay, holding the bag, failing at any good faith investigation before falsely and wrongfully determining that Kay made the fraudulent transfers herself or authorized another person to make them.

106.    Even though Chase had up to 45 days to conduct a proper, fulsome, and good faith investigation of the circumstances surrounding the unauthorized transfers of this $17,000 in funds, Chase instead simply sent out a form letter making a groundless blanket denial of Kay's report of unauthorized claims. Chase failed to correct the alleged errors within the timelines outlined in Reg. E. and therefore was obligated to provisionally credit Kay's account but failed to do so.

107.    Chase had no reasonable basis to conclude that an error in fraudulently transferring these funds on Kay's account and that the fraudulent withdrawals did not belong to her, as she had reported to the Astoria Police Department within a few days after she discovered her bank accounts with Chase had been illegally accessed.

108.    There was more than enough information available to Chase's investigators to support the conclusion that Kay was a victim of fraud and Chase was obligated to re-credit her account.

109.    Kay is entitled to the trebling of her actual damages, including her economic and non-economic damages resulting from Chase's violations of the EFTA.

SECOND CLAIM FOR RELIEF (In the Alternative to First Claim For Relief) –
ORS 74A.1010 *et seq.*
(Uniform Commercial Code—Funds Transfers)

110.    Ms. Kay individually restates and incorporates herein all her statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

111.    Ms. Kay pleads this Second Claim For Relief under Oregon's adoption of the Uniform Commercial Code—Funds Transfers, codified in ORS 74A.1010 *et seq.* ("UCC Article 4A") in the alternative to her claim for violations of the EFTA and Regulation E in the event that Ms. Kay is not afforded complete relief under the First Claim For Relief.

112.    Ms. Kay is a customer of Chase Bank, who is a bank under UCC Article 4A.

113.    Ms. Kay is a victim of unauthorized fund transfers sent by Chase Bank without Ms. Kay's authorization or permission. From Ms. Kay's account with Chase.

114.    Ms. Kay did not provide Chase with a payment order to send the unauthorized fund transfer on November 7, 2022, thereby causing Ms. Kay to suffer actual injury and damages.

115.    The fund transfer made by Chase on or about November 7, 2022, was not authorized, effective, nor enforceable because it did not begin with Ms. Kay's payment order.

116.    ORS 74A2040(1) provides that:

If a receiving bank accepts a payment order issued in the name of its customer as sender which is not authorized and not effective as the order of

the customer under ORS 74A.2020 (Authorized and verified payment orders) or not enforceable, in whole or in part, against the customer under ORS 74A.2030 (Unenforceability of certain verified payment orders), **the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund.** However, the customer is not entitled to interest from the bank on the amount to be refunded if the customer fails to exercise ordinary care to determine that the order was not authorized by the customer and to notify the bank of the relevant facts within a reasonable time not exceeding 90 days after the date the customer received notification from the bank that the order was accepted or that the customer's account was debited with respect to the order. The bank is not entitled to any recovery from the customer on account of a failure by the customer to give notification as stated in this section.

ORS 74A.2040 (1) (emphasis added).

117.   Ms. Kay did not provide payment orders to Chase authorizing the funds transfer / wire transfer.

118.   Ms. Kay provided notice to Chase on November 7, 2022, within a reasonable amount of time after learning of the unauthorized funds / wire transfers.

119.   Chase failed to reasonably verify the authenticity of the wire transfer order pursuant to reasonable security procedures agreed to by Ms. Kay.

120.   Chase's actions, and failure to act to cancel or recall the wire transfer was not in good faith, after Ms. Kay notified it of the unauthorized pending wire transfer on November 7, 2022, within minutes of getting notice herself.

121.   Chase did not follow a commercially reasonable security procedure to verify the authenticity of the unauthorized wire transfer order from Ms. Kay's checking account.

122.    Chase violated ORS 74A.2020(2)(b) when it failed to make any effort to verify the authenticity of the fraudulent wire transfer order in direct contradiction to Ms. Kay's instructions to keep her money safe and prevent any transfers from her account; instructions she gave Chase on November 4, 2022, three days prior to the fraudulent wire transfer.

123.    Chase is liable to refund the unauthorized funds and wire-transfer amount of $17,025 plus interest from the date Chase received the fraudulent and unenforceable payment order to wire funds from Ms. Kay's account.

THIRD CLAIM FOR RELIEF
(Conversion)

124.    Ms. Kay incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

125.    Under Oregon law, conversion is an act of wrongful exercise of dominion over property in exclusion of the owner's right, or the withholding of property from the owner's possession under a claim inconsistent with the owner's rights. *See Mustola v. Toddy*, 253 Or 658 (adopting the definition of conversion set forth in the *Restatement (Second) of Torts* § 222A (1965)).

126.    Ms. Kay held a possessory interest and right in all of her personal funds in her bank accounts held by Chase Bank.

127.    Ms. Kay's interest in her personal funds was greater than any interest held by Chase Bank, which held the funds in Ms. Kay's accounts for her benefits.

128.    Defendant deprived Plaintiff of the property interest in her account funds by taking Ms. Kay's funds without Plaintiff's authorization, actively denying

Ms. Kay access to her funds by refusing to assist her online access to her account over the weekend of November 5–7, 2022, and transferring away Ms. Kay's funds without Ms. Kay's authorization, and continuing to deprive Ms. Kay of her funds by refusing to return the funds in violation of Chase's legal obligation to do so under the EFTA and/or UCC Article 4A.

129.    Defendant did not return or offer to return Plaintiff's personal property that it took from her without right, consent or permission, despite lawful demands that had been made by Plaintiff to Defendant.

130.    Defendant's interference with Plaintiff's property rights in her illegally transferred funds, including but not limited to the $17,025, was a substantial one for which she has suffered serious damages and actual harm.

131.    Defendant exercised dominion or control or seriously interfered with Plaintiff's interest in those funds and such conduct deprived Plaintiff of her interest in those funds.

132.    The foregoing acts and omissions of Defendant and its employees and agents constitute a civil conversion of Plaintiff's personal property.

133.    As a result of Chase's conversion of Ms. Kay's property, Ms. Kay is entitled to damages in an amount based upon the value of the property converted, plus interest from the time of Defendant's conversion.

### FOURTH CLAIM FOR RELIEF
(Negligence)

134.    Ms. Kay incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

135.    Chase owed Kay a duty of care to take reasonable care when holding Ms. Kay's money.

136.    Chase failed to meet a reasonable standard of care owed to Ms. Kay when it failed to heed Ms. Kay's notice of fraudulent activity and access to her account.

137.    Chase failed to meet a reasonable standard of care owed to Ms. Kay when it prevented Ms. Kay from accessing her bank account over the weekend of November 5–7, 2022.

138.    Chase failed to meet a reasonable standard of care owed to Ms. Kay when it failed to reverse the unauthorized transfer of funds from her savings account to her checking account.

139.    Chase failed to meet a reasonable standard of care owed to Ms. Kay when it failed to prevent or reverse the fraudulent and unauthorized wire transfer from Ms. Kay's account.

140.    Chase thereafter breached its duties to Ms. Kay by failing to conduct its investigation of the transfer and the limitations of Ms. Kay's liability in good faith, and further by failing to re-credit Ms. Kay's accounts.

141.    Chase's breach of its duty of reasonable care actually and proximately caused Ms. Kay to suffer serious economic and non-economic damages, including but not limited to the loss of her $17,025, interest, emotional distress, and other foreseeable damages.

FIFTH CLAIM FOR RELIEF–Oregon Unfair Trade Practices Act—ORS 646.608 &
646.638
(Unfair Trade Practices Act).
Counts1 & 2

142.    Ms. Kay individually restates and incorporates herein all her

statements and allegations contained in the preceding paragraphs in their entirety,

as if fully rewritten for each of the following counts below in support of her FIFTH

Claim for Relief.

143.    The banking services Chase provided to Ms. Kay that are at issue in

this case were provided for personal, family, or household purposes.

FIFTH CLAIM – COUNT ONE – ORS 646.608(e)
(False Representation of Characteristics, Benefits, or Qualities of Services)

144.    Chase Bank represented that its accounts held for Ms. Kay's benefits

were safe and secure after Ms. Kay contacted Chase Bank to alert them of the

fraudulently obtained access to her accounts.

145.    Chase Bank represented that the accounts had the characteristic,

benefit, and quality of being safe and secure from Ms. Kay having her money stolen.

146.    Chase Bank represented that the accounts had the characteristic,

benefit, and quality that Chase would keep Ms. Kay's money safe and secure and

available to her.

147.    Chase Bank represented that Ms. Kay would have access to her

accounts to access her funds and check the status of her accounts.

148.    Chase Bank's representations regarding the characteristics, benefits, and qualities of its services were false and misleading. Chase knew or should have known its representations were false and misleading.

149.    Ms. Kay relied on Chase Bank's representations as to the safety and security provided by Chase's services.

150.    Ms. Kay suffered an ascertainable loss of money or property as a result of Chase's false or misleading misrepresentations when Chase prevented Ms. Kay from accessing her account, when Chase failed to transfer the funds back to Ms. Kay's saving account, and Chase executed a fraudulent wire transfer taking Ms. Kay's money and charging her a fee for doing so after falsely assuring Ms. Kay that Chase had protected her accounts and money when it failed to do so.

FIFTH CLAIM – COUNT TWO – ORS 646.608(g)
(Misrepresentation of Standard and Quality of Services)

151.    Chase Bank represented that it provided services for Ms. Kay's checking and savings accounts to keep them safe and secure from loss resulting from scammers and fraudsters.

152.    Chase's representations regarding the standard and quality of its services provided in conjunction with Ms. Kay's personal bank accounts were false and misleading to Ms. Kay.

153.    Chase willfully, intentionally, and/or with reckless disregard to the harm imposed on Ms. Kay caused from Chase's misrepresentations as to the

services provided to maintain Ms. Kay's access to her account and maintain the safety and security of the money Chase held on her behalf.

154.    Ms. Kay suffered an ascertainable loss of money or property as a result of Chase's false or misleading misrepresentations regarding the standard and quality of its services provided in keeping Ms. Kay's accounts safe and secure when Chase prevented Ms. Kay from accessing her account, when Chase failed to transfer the funds back to Ms. Kay's saving account, and Chase executed a fraudulent wire transfer taking Ms. Kay's money and charging her a fee for doing so after falsely assuring Ms. Kay that Chase had protected her accounts and money when it failed to do so.

### FIFTH CLAIM – AS TO BOTH COUNTS ONE AND TWO

155.    Chase Bank's use or employment of the unlawful trade practices detailed above in this Fifth Claim For Relief were willful because Chase knew or should have known its conduct violated the UTPA.

156.    Defendant's unlawful trade practices caused Ms. Kay to suffer economic damages including $17,000 transferred by Chase via an unauthorized transfer, a $25 charge Chase charged Ms. Kay, gas to drive to the police station to make a criminal complaint, in a total amount to be proven at trial.

157.    Ms. Kay is entitled to the greater of her actual damages or $200.00 in statutory damages for each time Defendant made use of or employed an unlawful trade practice.

158.    Ms. Kay is entitled to her costs and expenses incurred in relation to this action, including reasonable attorney fees under ORS 646.638.

FIFTH CLAIM—AS TO BOTH COUNTS—Punitive Damages

159.    Chase Bank acted with malice or showed a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the health, safety, and welfare of others thereby requiring Chase Bank to pay punitive damages in an amount to be determined by the jury to be reasonable.

160.    Chase Bank acted with malice by wrongfully and intentionally telling consumers their money is safe in their accounts and then denying them access to their accounts, insufficiently investigating the unauthorized transfers, failing to re-credit funds from unauthorized transfers in violation of applicable law, and blaming consumer depositors like Ms. Kay for Chase's failures. Upon information and belief, there are dozens of complaints with the Oregon Attorney General about Chase's unfair trade practices regarding unauthorized transfers from consumer customer bank accounts.

161.    Chase Bank acted with intentional disregard for the interests of its clients when it told Ms. Kay her accounts would be safe, and she didn't need to transfer funds back to her savings account and that her checking account was not in danger of an unauthorized transfer, despite having knowledge and experience in this exact type of scam and fraud being perpetrated on other consumer accounts and

being told by Ms. Kay from the outset that her account and access terminal had been compromised.

162.    Chase Bank acted intentionally and wrongfully, or at least with reckless disregard to the interests of consumer account holders, including Ms. Kay, when it failed to promptly reverse the unauthorized transfers, and failed to proactively monitor consumer accounts for unauthorized transfers, failed to adequately investigate timely notices of error, and failed to reverse transactions despite being in possession of all the information necessary to protect consumer deposit accounts like Ms. Kay's.

163.    Chase Bank's intentional and wrongful actions were without just cause or excuse.

164.    Chase Bank's intentionally wrongful business practices demonstrated outrageous indifference to a highly unreasonable risk that consumer deposit holders might be harmed by its wrongful business practices.

165.    Chase Bank's intentionally wrongful business practices demonstrated Defendant's conscious indifference to the welfare of its customers, specifically Ms. Kay, a vulnerable person.

166.    Defendant's wrongful and intentional business practices and systemic conduct evidence a high degree of social irresponsibility.

167.    Chase Bank's intentional and wrongful actions caused Ms. Kay to suffer harm of losing a significant portion of her savings while on a fixed income,

causing her additional costs and expenses, as well as causing emotional and physical harm in the form of headaches, anxiety, and depression.

WHEREFORE Plaintiffs pray for judgment against Defendant as follows:

(1) On the First Claim For Relief:

1. Declaration that Plaintiff's Liability is limited to $0, or no more than $50;

2. Actual Damages pursuant to 15 U.S.C. § 1693m(a)(1), consisting of:

   a) Economic damages in an exact amount to be proven at trial, together with prejudgment interest;

   b) Non-economic damages in an exact amount to be proven at trial, together with prejudgment interest;

3. Statutory Damages in the maximum amount of $1,000.00 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

4. Reasonable attorney fees and costs pursuant to 15 U.S.C. § 1693m(a)(3);

5. Treble damages on any sums awarded under 15 U.S.C. § 1693m(a)(1), pursuant to 15 U.S.C. § 1693f(e);

(2) On the Second Claim For Relief (In the Alternative to the First Claim For Relief):

1. Actual damages of $17,025.00 plus prejudgment interest at the maximum allowable rate;

(3) On the Third Claim for Relief (Conversion):

1. Economic damages in an exact amount to be proven at trial, including the value of plaintiff's property converted by defendant, all reasonable and foreseeable damages, together with prejudgment interest;

(4) On the Fourth Claim for Relief (Negligence)

1. All damages suffered by plaintiff actually and proximately caused by defendant's breach of duty owed to plaintiff, in an amount to be proven at trial, together with all reasonably foreseeable damages stemming therefrom, including economic and non-economic damages in an exact amount to be proven at trial, together with prejudgment interest;

(5) On the Fifth Claim for Relief (Oregon Unfair Trade Practices Act);

1. A declaratory judgment that Defendant's conduct violated the UTPA;

2. The greater of Plaintiff's actual damages including economic and noneconomic damages or $200.00 pursuant to ORS 646.638(1);

3. Punitive damages pursuant to ORS 646.638(1);

4. Costs of litigation and reasonable attorney fees incurred by Ms. Kay in prosecuting this case, pursuant to ORS 646.638(3);

(6) Prejudgment and Post-judgment interest on all claims at the maximum allowable rate;

(7) For all such further relief that the Court may deem just and appropriate.

//

//

**JURY DEMAND**

Ms. Kay is entitled to and hereby respectfully demands a trial by jury.

DATED this 4th day of October, 2023

MERTENS LAW, LLC

By: /s/ Chris Mertens
Chris Mertens (OSB No. 092230)
Mertens Law, LLC
1040 NE 44th Avenue, Suite 4
Portland, Oregon 97213
Phone: (503) 836-7673
Fax: (503) 206-0115
Chris@MertensCSBLaw.com

AND

KELLER ROHRBACK L.L.P.

Sarah R. Osborn (OSB No. 222119)
601 SW 2nd Ave, Suite 1900
Portland, OR 97204
(206) 623-1900
Fax (206) 623-3384
sosborn@kellerrohrback.com

***Attorneys for Plaintiff***